IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CHRISTOPHER ERIC BOUCHAT,

　　*Plaintiff*,

　　v.　　　　　　　　　　　　　　　　　　　　　Civil Action No. ELH-15-2417

STATE OF MARYLAND, *et al.*,

　　*Defendants*.

Christopher Eric Bouchat, Woodbine, Maryland, pro se, for plaintiff.

Julia Doyle Bernhardt and Jeffrey Lewis Darsie, OFFICE OF THE ATTORNEY GENERAL OF MARYLAND, Baltimore, Maryland, for defendants.

Filed:  September 7, 2016

Before Niemeyer, Circuit Judge, and Hollander and Russell, District Judges; Judge Hollander wrote the Opinion, in which Judges Niemeyer and Russell joined.

Hollander, District Judge:

　　Christopher Eric Bouchat, the self-represented plaintiff, challenges the constitutionality of Maryland's most recent legislative redistricting plan, which was proposed in 2011 and went into effect in February 2012 (the "Plan" or the "2012 Plan").  *See* Joint Resolutions 1 and 2, Acts of 2012; Md. Code (1984, 2004 Repl. Vol.), §§ 2-201, 2-202 of the State Government Article ("S.G."); *see also* S. G. §§ 2-201, 2-202 (2014 Repl. Vol., 2015 Supp.); *In the Matter of 2012 Legislative Districting of the State*, 436 Md. 121, 128, 80 A.3d 1073, 1076-1077 (2013).  Plaintiff has named as defendants the State of Maryland; Linda H. Lamone, State Administrator of Elections; and David J. McManus, Jr., Chair of the Maryland State Board of Elections

(collectively, the "State").[1]  According to Mr. Bouchat, the Plan violates his constitutional rights, both as a voter and as an unsuccessful Republican candidate in 2014 for the Maryland House of Delegates.   ECF 31, Amended Complaint, ¶ 26.[2]

Defendants have moved to dismiss the Amended Complaint, which is supported by a memorandum.  ECF 32; ECF 32-1 (collectively, "Motion" or "Motion to Dismiss").  Citing Fed. R. Civ. P. 12(b)(6), they assert that the Amended Complaint fails to state a claim; it is barred by res judicata; and the claims lodged against the State, and most of the claims asserted against its officials, are barred by the Eleventh Amendment and principles of sovereign immunity.  Plaintiff opposes the Motion.  ECF 35 ("Opposition").  Defendants have not filed a reply and the time to do so has expired.  *See* Local Rule 105.2(a).

A three-judge panel, convened pursuant to 28 U.S.C. § 2284, heard argument on the Motion on July 12, 2016.  *See Shapiro v. McManus*, ____ U.S. ____, 136 S. Ct. 450 (2015).  For the reasons set forth below, we shall grant the Motion to Dismiss.

## I.   Factual Background[3]

Article III, § 5 of the Maryland Constitution requires that, in the second year following each United States Census, the Governor and the State Legislature shall "reapportion the State's

---

[1] Mr. Bouchat initially sued Bobbie Mack, who was then Chairman of the Maryland State Board of Elections.  Effective July 16, 2015, McManus replaced Mack as Chair.  Therefore, McManus was substituted for Mack, pursuant to Fed. R. Civ. P. 25(d)(1).

[2] Plaintiff submitted exhibits with his original Complaint, filed on August 14, 2015.  *See* ECF 1.  Plaintiff also filed an initial version of the Amended Complaint on May 13, 2016 (ECF 29), which included exhibits, but that submission was deemed filed in error and is not the operative pleading.  *See* ECF 29; ECF 30.  When Mr. Bouchat refiled his Amended Complaint on May 19, 2016, he did not resubmit the exhibits.

[3] The Factual Background contains information derived from earlier litigation in which Mr. Bouchat challenged the Plan.  As discussed, *infra*, the information gleaned from the prior litigation is subject to judicial notice.

legislative representation consistent with the State's current demographics." *In the Matter of 2012 Legislative Districting of the State*, 436 Md. 121, 126, 80 A.3d 1073, 1075 (2013) (hereinafter, "*Legislative Districting*").   Article III, § 5 of the Maryland Constitution states, in part: "Following each decennial census of the United States and after public hearings, the Governor shall prepare a plan setting forth the boundaries of the [State's 47] legislative districts for electing of the members of the Senate and the House of Delegates."   The plan must conform with Sections 2, 3, and 4 of Article III.  *Id.* at 127, 80 A.3d at 1076.

Accordingly, in 2011, then Governor Martin O'Malley appointed five individuals to serve on the Governor's Redistricting Advisory Committee ("GRAC"), for the purpose of holding public hearings concerning the proposed redistricting of Maryland's congressional and legislative districts and the drafting of a proposed redistricting plan.[4]   On December 16, 2011, after twelve public hearings, the GRAC published its plan for the State's 47 legislative districts. *Legislative Districting*, 436 Md. at 128, 80 A.3d at 1076.   During the 2012 session of the Maryland General Assembly, the Plan was submitted for approval to both the Maryland House of Delegates and the Maryland Senate as Joint Resolution No. 1.  *Id.*, 80 A.3d at 1076-77.   The Plan became law on February 24, 2012, codified as revisions to S.G. §§ 2-201 and 2-202.  ECF 31, Amended Complaint, ¶¶ 11-12; *Legislative Districting*, 436 Md. at 127, 80 A.3d at 1077.

---

[4] A comprehensive summary of Maryland's redistricting process in general, and the details as to the implementation of that process with respect to the 2012 Plan in particular, is contained in *Legislative Districting*, 436 Md. 121, 80 A.3d 1073.

Several cases were filed in federal court challenging the congressional redistricting that followed the 2010 census.  *See  Shapiro v. McManus*, ____ F. Supp. 3d ____, 2016 WL 4445320 (D. Md. Aug. 24, 2016); *Parrott v. Lamone*, GLR-15-1849, 2016 WL 4445319 (D. Md. Aug. 24, 2016); *Fletcher v. Lamone*, 831 F. Supp. 2d 887 (D. Md. 2011), *aff'd*, 133 S. Ct. 29 (2012).  To our knowledge, the case *sub judice* concerns the only federal challenge to Maryland's legislative districts.

In anticipation of challenges to the newly enacted Plan, the Maryland Court of Appeals appointed Judge Alan M. Wilner, a retired member of that court, as a Special Master to conduct hearings and to address any challenges. *Legislative Districting*, 436 Md. at 129, 80 A.3d at 1077. A handful of challenges to the Plan were filed by the deadline of May 1, 2012, including a Petition filed by Mr. Bouchat in April 2012 (the "Petition"). *Id.* at 129, 138, 80 A.3d at 1077, 1082.

Mr. Bouchat is a resident of Carroll County, Maryland (ECF 31, ¶ 1), and is a "Republican-registered voter." *Id.* ¶ 8. Before the 2012 Plan took effect, he resided in Legislative District 9B, comprised of constituents living only in Carroll County and represented by a single member of the House of Delegates. *Id.* ¶ 13. After enactment of the 2012 Plan, Mr. Bouchat's residence was redistricted to Legislative District 9A, which plaintiff describes as a "cross-county two-member district. . . .", including both Carroll and Howard counties. *Id.* ¶ 10.

In his Petition, Mr. Bouchat argued, *inter alia*, that based on several constitutional principles, the Maryland Court of Appeals should "requir[e] that all delegates be elected from single-member districts"; "prohibit[] House of Delegates subdistricts from crossing county lines"; and "requir[e] that each county be entitled to one Delegate and that all other Delegate seats be apportioned according to population." *Legislative Districting*, 436 Md. at 138-39, 80 A.3d at 1082-83. He also complained that the Plan violated Article IV, § 4 of the Federal Constitution, and relied, *inter alia*, on Article 1, §§ 2 and 3 of the United States Constitution, as well as Article II, § 1 and the Ninth and Tenth Amendments to the Constitution. *Id.* at 139, 80 A.3d at 1083.

In September 2012, the Special Master held a hearing to consider all challenges to the

Plan. *Id.* at 129, 80 A.3d at 1077. Evidence was presented, including expert reports. *Id.*

Thereafter, the Special Master issued a report in which he recommended upholding the Plan.

As to Mr. Bouchat, the Special Master said, in part, *id.* at 139-143, 80 A.3d at 1083-85:

"Mr. Bouchat's first argument, that the structure of Congress directed in Article I, §§ 2 and 3 of the U.S. Constitution is a required template for the States, is without merit. The text of those provisions, by their clear wording, apply only to the structure of Congress and do not purport in any way to control the structure of State legislatures, much less to require a State legislative apportionment that would produce significant population disparities or to require single-member districts that do not cross county lines. Apart from the lack of any such textual requirement, the Supreme Court, in *Reynolds v. Sims*, *supra*, 377 U.S. 533, 84 S. Ct. 1362, 12 L.Ed.2d 506 expressly rejected "the applicability of the so-called federal analogy to state legislative apportionment arrangements," holding that "the Founding Fathers clearly had no intention of establishing a pattern or model for the apportionment of seats in state legislatures when the system of representation in the Federal Congress was adopted." *Id.* at 572–73, 84 S. Ct. at 1387, 12 L.Ed.2d at 534–35.

Nor does the guaranty of a republican form of government in Article IV, § 4 of the U.S. Constitution create a Federal Constitutional basis for judicial relief. *See Baker v. Carr*, 369 U.S. 186, 218–24, 82 S. Ct. 691, 710–13, 7 L.Ed.2d 663, 686– 89 (1962), where the Supreme Court flatly rejected Article IV, § 4 as a basis for judicial review of a State's legislative apportionment plan. *See also New York v. United States,* 505 U.S. 144, 184, 112 S.Ct. 2408, 2432, 120 L.Ed.2d 120, 155 (1992).

The Federal Constitution constraints on State legislative districting are those arising from the Equal Protection Clause of the Fourteenth Amendment, the principal one being the 'one person/one vote' requirement announced in *Reynolds v. Sims*, under which, as this Court iterated in *Matter of Legislative Districting, supra,* 370 Md. at 325, 805 A.2d at 299, "the states are required to apportion *both* houses of their legislatures on an equal population basis, to assure that one citizen's vote is approximately equal in weight to that of every other citizen." (Emphasis added).

\*     \*     \*

Unless the size of the House of Delegates were to be expanded five to ten-fold, any requirement that each county be entitled to one Delegate would be doomed for the same reason. *See Maryland Committee, supra*. As Article III, §§ 2 and 3 of the Maryland Constitution provide for 141 members of the House of Delegates,

to be elected from 47 Legislative Districts, three from each district, and as there is no Federal Constitutional impediment to that provision, the apportionment of the House of Delegates on any basis other than substantial equality of population is impermissible.

Finally, in his petition, Mr. Bouchat contends that multi-member Delegate districts are prohibited under Federal Constitutional law and that, to the extent they may be permitted, they may not cross county lines.

*   *   *

The Supreme Court, on a number of occasions, has expressed concern over certain undesirable features of multi-member districts, especially as they may dilute the ability of racial or ethnic minorities in such districts to elect members of their group to legislative office. So far, however, the Court has made clear that such a district is not *per se* unlawful under the Equal Protection Clause. The clearest expression of the Court's view is in *Whitcomb v. Chavis*, 403 U.S. 124, 142–43, 91 S.Ct. 1858, 1868–69, 29 L.Ed.2d 363, 375–76 (1971).

*   *   *

As Mr. Bouchat, who has the burden of production and persuasion on this issue, has failed to show that any multi-member district provided for in the Enacted Plan would have the effect of diluting or canceling the voting strength of any racial or political element, he has failed to make a case for declaring any such district unlawful. With respect to the complaint about a multi-member district including parts of more than one county, there is no Federal prohibition against such a district, but is more a matter of compliance with the requirement in Article III, § 4 of the Maryland Constitution that, in the creation of any district or subdistrict, due regard be given to natural and political boundaries. As the Court has made clear, however, if a multi-county district or subdistrict is created in order to gratify some supervening requirements—equivalent population, compliance with the Voting Rights Act—then the "due regard" requirement may be regarded as either yielding or complied with. It is "the most fluid of the constitutional component outlined § 4." *In re Legislative Districting, supra*, 299 Md. at 681, 475 A.2d at 439.

**For these reasons, it is recommended that Mr. Bouchat's petition be denied.**"

Mr. Bouchat (and others) filed exceptions to the report and recommendation of the Special Master. On November 7, 2012, the Maryland Court of Appeals heard oral argument on the exceptions. *Legislative Districting*, 436 Md. at 129-30, 80 A.3d at 1077. Mr. Bouchat complained, *inter alia*, that the "one person, one vote" doctrine violates the Fourteenth

Amendment and Article IV, § 4 of the Constitution.  *Id.* at 143, 80 A.3d at 1085.  He also claimed, among other things, that Judge Wilner "failed to address adequately the purported impropriety of having multi-member districts. . . ."  *Id.* at 143-44, 80 A.3d at 1085.

In an Order dated November 9, 2012, the Maryland Court of Appeals denied all challenges, and stated that its reasons would follow.  *See In the Matter of 2012 Legislative Districting of the State*, 429 Md. 301, 55 A.3d 713 (2012).  Thereafter, in an opinion dated December 10, 2013, the Maryland Court of Appeals issued a comprehensive opinion in which it provided its reasons for the rejection of the various challenges to the Plan.  *Legislative Districting*, 436 Md. 121, 80 A.3d 1073.

After reviewing in extensive detail the 2012 Plan and its development, the Maryland Court of Appeals concluded that the 2012 Plan complied with both the State and federal constitutions.  *Id.*  As to Mr. Bouchat, the court held that his exceptions to the Special Master's findings were "without merit," and it adopted the Special Master's recommendation to deny Mr. Bouchat's Petition.  *Id.* at 143-44, 80 A.3d at 1085-86.  The court said, *id.*:

> The petitioner excepts to the recommendation of the Special Master, arguing that the "one person, one vote" doctrine exists in violation of rights granted under the Fourteenth Amendment and Article IV, § 4 of the United States Constitution.  In support of his exception he notes that our government is a democratically elected federalist republic, which protects the voting rights of citizens who live in less populated political sub-divisions through the Electoral College and the balance of representation in the U.S. Senate.  Without clear or detailed explication, he argues that, under the Fourteenth Amendment, "voting rights" must be uniform whether in the federal or state system.  In addition to his general exception to the Special Master's recommendation, the petitioner specifically argues that the Special Master failed to address adequately the purported impropriety of having multi-member districts with varying numbers of Delegates.  He argues, again without clear explication, that this apportionment structure violates every premise of the "one person, one vote" principle and, in addition, offends the Fourteenth Amendment and Article IV, § 4 of the United States Constitution.
>
> We conclude that the petitioner has not met the required burden to properly challenge the Enacted Plan.  The petitioner's challenge is not supported, as

required under Article III, § 4, by "compelling evidence," "demonstrat[ing] that the plan has subordinated mandatory constitutional requirements to substantial improper alternative considerations." *Matter of Legislative Districting*, 370 Md. at 373, 805 A.2d at 328.

There is no indication that Mr. Bouchat sought certiorari to the Supreme Court as to the decision of the Maryland Court of Appeals.

In June 2014, Mr. Bouchat ran in the Republican party primary for a seat in the Maryland House of Delegates. ECF 31, ¶ 8. He sought to represent District 9A, which includes parts of Carroll and Howard counties. *Id.* ¶ 10. Of the five candidates, plaintiff was "the only Carroll County Republican candidate" in the race. *Id.* ¶ 9. Mr. Bouchat lost the election. *Id.* ¶ 10. He points out that in Carroll County he received the most votes among all of the candidates, but in Howard County he received the fewest votes. *Id.* Claiming that he "ran a well-funded and fundamentally good campaign equally in both Carroll and Howard counties," plaintiff maintains that the results of the 2014 election "prove that the legislative election districts are discriminatory." *Id.* ¶ 18.

This case followed in August 2015. *See* ECF 1. As noted, Mr. Bouchat again challenges the 2012 Plan, in his capacity as a voter and as an unsuccessful candidate for political office. ECF 31, ¶ 26. His claims are based on a variety of federal and State constitutional principles. *See, e.g.*, ECF 31, ¶¶ 11-12, 20-30.

In particular, plaintiff argues that the GRAC used "voting data to manipulate the voting districts" (*id.* ¶ 12), in violation of the First Amendment to the Constitution and the Equal Protection Clause of the 14th Amendment. *Id.* ¶¶ 12, 20, 24. Further, he alleges that the "lines established by GRAC were done so in order to gerrymander the 9A Maryland legislative voting district and are not geographically reasonable." *Id.* ¶ 14. Further, Mr. Bouchat maintains that "Carroll County should remain undivided and not split between Howard County and Carroll

County." *Id.* ¶ 19. And, he argues that Maryland's counties or subdivisions deserve equal representation in the Maryland legislature, yet "8 political subdivisions do not have a resident senator . . . ." *Id.* ¶ 33.

In Mr. Bouchat's view, "[t]he current Maryland legislative districts are clearly designed with the intent to manipulate election results, are discriminatory against the non-dominant political party and violate [his] guaranteed constitutional voting rights in violation of the First Amendment of the Constitution[.]" *Id.* ¶ 15. Further, plaintiff maintains that the 2012 Plan has resulted in "institutionalized voter discrimination and disenfranchisement," in violation of Article III, § 3 of the Maryland Constitution, because it "causes one political party in power, via election result manipulations, to maintain an unprecedented super majority control of both houses in the General Assembly . . . ." *Id.* ¶ 16; *see also id.* ¶¶ 21-22. In support of his argument, Mr. Bouchat observes that in 2014, Democrats controlled the Maryland General Assembly by 68.38%. *Id.* ¶ 17. Plaintiff also relies on Article IV, § 4 of the Federal Constitution as well as the 15th Amendment to the Constitution. *Id.* ¶¶ 23, 25.

According to Mr. Bouchat, the Plan thwarts the "purpose of a bi-cameral legislature," which "is to ensure the protection of political minorities who live in less populated political subdivisions . . . ." *Id.* ¶ 29. He also complains that, with respect to the districts created under the Plan, "no regard was given to natural boundaries or established political subdivisions," in violation of Article III, Sections 3 and 4 of the Maryland Constitution. *Id.* ¶ 22.

Plaintiff requests various forms of relief, including an injunction "requiring the representatives of The State of Maryland re-draft and re-configure the Maryland legislative election districts which are fair and reasonable"; a declaratory judgment stating that defendants have violated Article III, § 4 of the Maryland Constitution; an "injunction against the State of

Maryland to prohibit the holding of new elections until the legislative district are fairly and reasonable revised"; and an order awarding plaintiff "the reimbursement of [his] campaign costs, court costs, and other financial damages and expenses of $75,000."  ECF 31 at 7.

## II.     Standard of Review

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6).  *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom. McBurney v. Young*, ___U.S.___, 133 S. Ct. 1709 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."  Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2).  It provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendant with "fair notice" of the claim and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ." (citation omitted)); *see also Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011).  But, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2).  *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect

statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby,__-_U.S.___*, 135 S. Ct. 346, 346 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions," or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Id.* at 556 (internal quotations omitted).

In reviewing a Rule 12(b)(6) motion, a court "'must accept as true all of the factual allegations contained in the complaint,'" and must "'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, ___U.S.___, 132 S. Ct. 402 (2011). But, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied*, ___U.S.___, 132 S. Ct. 1960 (2012).

A motion asserting failure to state a claim typically "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards*, 178 F.3d at 243 (quotation marks omitted); *see Houck*, 791 F. 3d at 484; *Tobey v. James*, 706 F.3d 379, 387 (4th Cir. 2013). But, "if all facts necessary to the affirmative defense 'clearly appear[] *on the face of the complaint*,'" or in other material that is the proper subject of consideration under Rule 12(b)(6), such a defense can be resolved on the basis of the facts alleged in the complaint. *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc) (citation omitted) (emphasis in *Goodman*); *see Houck*, 791 F.3d at 484; *Richmond, Fredericksburg & Potomac R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993).

In resolving a motion under Rule 12(b)(6), a court is "generally limited to a review of the allegations of the complaint itself." *Goines*, 822 F.3d at 165-66; *see Bosiger v. U.S. Airways, Inc.*, 510 F.3d 442, 450 (4th Cir. 2007). Under certain limited exceptions, however, a court may consider documents beyond the complaint. *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015). For example, a court may properly consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits . . . ." *Goines*, 822 F.3d at 166 (citations omitted); *see U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014) (quoting *Philips v. Pitt Cty. Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)); *see Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

"[A] court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" *Goldfarb*,

791 F.3d at 508; *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 466 (4th Cir. 2011), *cert. denied*, ___U.S.___, 132 S. Ct. 115 (2011); *Philips v. Pitt County Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). Under Fed. R. Evid. 201, a court may take judicial notice of adjudicative facts if they are "not subject to reasonable dispute," in that they are "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

Of relevance here, "[a] court may take judicial notice of docket entries, pleadings and papers in other cases without converting a motion to dismiss into a motion for summary judgment." *Brown v. Ocwen Loan Servicing, LLC*, PJM-14-3454, 2015 WL 5008763, at *1 n.3 (D. Md. Aug. 20, 2015), *aff'd*, 639 Fed. App'x 200 (4th Cir. 2016). *Cf. Anderson v. Fed. Deposit Ins. Corp.*, 918 F.2d 1139, 1141 n.1 (4th Cir. 1990) (holding that a district court may "properly take judicial notice of its own records"). Moreover "a court may take judicial notice of facts from a prior judicial proceeding when the res judicata defense raises no disputed issue of fact." *Andrews v. Daw*, 201 F.3d 521, 524 n.1 (4th Cir. 2000).

There is no dispute that, in the Maryland judicial system, Mr. Bouchat previously challenged the 2012 Plan. Nor is there any dispute as to plaintiff's allegations in his Petition or the disposition by the Maryland Court of Appeals. Therefore, this Court may take judicial notice of the prior litigation, in which plaintiff lodged a constitutional challenge to the same Plan. However, "these facts [must be] construed in the light most favorable" to the non-movant. *Clatterbuck v. City of Charlottesville,* 708 F.3d 549, 557 (4th Cir. 2013), *abrogated on other grounds*, *Reed v. Town of Gilbert, Ariz.*, ___U.S.___, 135 S. Ct. 2218 (2015), *as recognized in Cahaly v. Larosa*, 796 F.3d 399 (4th Cir. 2015).

Given that the plaintiff is self-represented, his pleadings are to be "'liberally construed'" and "'held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted). "However, liberal construction does not absolve Plaintiff from pleading a plausible claim." *Bey v. Shapiro Brown & Alt, LLP*, 997 F. Supp. 2d 310, 314, (D. Md. 2014); *see also Coulibaly v. J.P. Morgan Chase Bank, N.A.*, DKC 10–3517, 2011 WL 3476994, at *6 (D. Md. Aug. 8, 2011) ("[E]ven when pro se litigants are involved, the court cannot ignore a clear failure to allege facts that support a viable claim."), *aff'd*, 526 F. App'x 255 (4th Cir. 2013).

## III.    Discussion

As noted, defendants contend, *inter alia*, that plaintiff's Amended Complaint (ECF 31) is barred by the doctrine of res judicata.  ECF 32, Motion, at 1, 9-11.  Plaintiff disagrees (ECF 35, ¶ 2), insisting that the "only similarity" between the present case and his earlier case "is the identity of the parties. . . ." ECF 35-1 at 2. According to plaintiff, "everything else is different and concerns different time periods, different sets of circumstances and different issues." *Id.* Plaintiff explains that his earlier case involved "a challenge to the re-districting plan as a Maryland voter," whereas he is now "bringing challenges as a candidate for the House of Delegates and as a voter . . . ." *Id.*   In plaintiff's view, the two cases are distinct because the "2012 litigation concerned a different election and process than the 2015 litigation" and "the evidence" presented in the instant case "is based on the 2014 election and not on evidence previously presented." *Id.*

Few legal issues are more dynamic than those surrounding voting rights and the administration of elections in the United States, as shown in a spate of recent cases in the Supreme Court and in the Fourth Circuit.  *See, e.g.*, *Wittman v. Personhuballah*, ___U.S.___,

136 S. Ct. 1732 (2016); *Harris v. Ariz. Indep. Redistricting Comm'n*, ___U.S.___, 136 S. Ct. 1301 (2016); *Evenwel v. Abbott*, ___U.S.___, 136 S. Ct. 1120 (2016); *Alabama Legislative Black Caucus v. Alabama*, ____ U.S. ____, 135 S. Ct. 1257 (2015); *N.C. State Conference of the NAACP v. McCrory*, ___F.3d___, 2016 WL 4053033 (4th Cir. July 29, 2016); *Raleigh Wake Citizens Ass'n v. Wake Cnty. Bd. of Elections*, ___F.3d___, 2016 WL 3568147 (4th Cir. July 1, 2016). Nevertheless, plaintiff seems to overlook that his challenge here, as before, pertains to the identical Plan. Thus, the well established legal doctrine of res judicata dictates the outcome of this case.

Res judicata, or claim preclusion, is a judicial doctrine by which "a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." *Montana v. United States*, 440 U.S. 147, 153 (1979); *see Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156, 161 (4th Cir. 2008). The doctrine precludes parties from "contesting matters that they have had a full and fair opportunity to litigate," thereby conserving judicial resources and minimizing the possibility of inconsistent decisions. *Montana*, 440 U.S. at 153–54.

The doctrine of res judicata is "designed to protect 'litigants from the burden of relitigating an identical issue with the same party or his privy and [to promote] judicial economy by preventing needless litigation.'" *Laurel Sand & Gravel, Inc.*, 519 F.3d at 161-62 (quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979)). Res judicata also extends to claims that could have been asserted and litigated in the original suit. *Clodfelter v. Republic of Sudan*, 720 F.3d 199, 210 (4th Cir. 2013).

In federal court, the doctrine applies when the following three elements are present: "(1) a final judgment on the merits in a prior suit, (2) an identity of the cause of action in both the earlier and later suit, and (3) an identity of parties or their privies in the two suits." *Providence*

*Hall Assoc. Ltd. P'ship v. Wells Fargo Bank, N.A.*, 816 F.3d 273, 276 (4th Cir. 2016) (citation and quotation marks omitted); *see also Clodfelter*, 720 F.3d at 210; *Weiner v. Fort*, 197 F. App'x 261, 264 (4th Cir. 2006); *In re Varat Enter., Inc.*, 81 F.3d 1310, 1315 (4th Cir. 1996); *Young–Henderson v. Spartanberg Area Mental Health Ctr.,* 945 F.2d 770, 773 (4th Cir. 1991) (quoting *Nash Cty. Bd. of Educ. v. Biltmore Co.*, 640 F.2d 484, 486 (4th Cir. 1981)).

Maryland law is to the same effect. *See, e.g.*, *Powell v. Breslin*, 430 Md. 52, 63-64, 59 A.3d 531, 538 (2013); *Cochran v. Griffith Energy Servs., Inc.*, 426 Md. 134, 140, 43 A.3d 999, 1002 (2012); *deLeon v. Slear*, 328 Md. 569, 580, 616 A.2d 380, 385 (1992).[5]   These cases establish that, under Maryland law, a party establishes res judicata by demonstrating three elements:  (1) the parties in the present action are the same or in privity with the parties in the earlier action;  (2) the claims at issue in the present action are identical to those determined in the previous action or could have been raised and determined in the previous action; and (3) there was a final judgment on the merits in the previous action.

All of these elements are satisfied here.

First, as noted, plaintiff filed a prior action in a Maryland court, challenging the constitutionality of Maryland's 2012 Plan.  *See Legislative Districting*, 436 Md. at 138, 80 A.3d at 1082.  That case resulted in a final judgment on the merits; the highest court in Maryland, the Maryland Court of Appeals, denied Mr. Bouchat's Petition.  *Id.* at 144, 80 A.3d at 1086 ("Accordingly, the petitioner's exceptions to the Special Master's findings and recommendations

---

[5] For purposes of claim preclusion in federal court, the applicable law is the law of the tribunal in which the prior judgment was entered.  *See Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984); *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293 (2005); *Laurel Sand & Gravel, Inc.*, 519 F.3d at 162; *see also Jones v. HSBC Bank USA, N.A.*, 444 F. App'x 640, 643 (4th Cir. 2011) (per curiam).

are without merit and we, therefore, adopt the Special Master's recommendation to deny the Bouchat petition.").  And, Mr. Bouchat did not seek certiorari to the Supreme Court.

Second, for the purpose of res judicata analysis, it is patently clear that plaintiff's claims in the earlier action are "identical" to those asserted here.  We have quoted extensively from the earlier case to demonstrate that the claims are identical; all of them are rooted in the enactment of the 2012 Plan.

A claim is identical in the context of res judicata if it "involves a right arising out of the same transaction or series of connected transactions that gave rise to the claims in the first action." *Harnett v. Billman,* 800 F.2d 1308, 1314 (4th Cir. 1986); *see Clodfelter*, 720 F.3d at 210 ("[W]e follow the 'transactional' approach when considering whether causes of action are identical: 'As long as the second suit 'arises out of the same transaction or series of transactions as the claim resolved by the prior judgment,' the first suit will have preclusive effect.'") (citation omitted); *In re Varat Enter., Inc.*, 81 F.3d at 1316.  Notably, "[u]nder this transactional approach, res judicata will bar a 'newly articulated claim[ ]' if it is based on the same underlying transaction and could have been brought in the earlier action."  *Clodfelter*, 720 F.3d at 210 (citing *Laurel Sand & Gravel, Inc.*, 519 F.3d at 162).

As we have indicated, in both the Maryland Court of Appeals and in this case, Mr. Bouchat advanced substantially similar allegations and arguments, *i.e.*, that Maryland's 2012 legislative redistricting Plan violates his constitutional rights under Maryland and federal law. *See*, ECF 31, Amended Complaint; *Legislative Districting*, 436 Md. at 138, 80 A.3d at 1082. For example, in both actions, plaintiff complained that the Plan fails to protect the voting rights of citizens who live in less populated areas.  ECF 31, ¶ 29; *Legislative Districting*, 436 Md. at 143-44, 80 A.3d at 1085-86.  And in both matters, Mr. Bouchat asserted that it is unlawful for

Maryland to create legislative districts that cross county lines. ECF 31, ¶ 19; *Legislative Districting*, 436 Md. at 138, 80 A.3d at 1082.

That plaintiff subsequently ran for elective office in 2014 and lost does not alter the substance of his challenge.   At best, from plaintiff's perspective, his unsuccessful candidacy merely supports his earlier claims, which were considered and rejected by Maryland's highest court.   Indeed, plaintiff asserts in this case that the results of the 2014 primary election "prove" that the Plan is discriminatory.   ECF 31, ¶ 18.   Plaintiff has simply repackaged and amplified his allegations in this Court, to include the fact of his unsuccessful candidacy for political office in 2014, and additional federal constitutional violations, which could have been asserted earlier.

Notably, "[a] plaintiff's invocation of a different legal theory in the subsequent action" does not preclude application of res judicata.   *Onawola v. Johns Hopkins Univ.*, AMD-07–870, 2007 WL 5428683, at *1 (D. Md. Sept. 24, 2007) (citing *Harnett*, 800 F.2d at 1314).   "For [claim preclusion] purposes . . . it is the existence of the claim, not awareness of it, that controls." *Keith v. Aldridge*, 900 F.2d 736, 740 n.5 (4th Cir. 1990).   Claim preclusion is "intended to prevent the sort of dribbling of claims" presented here.   *Serna v. Holder*, 559 Fed. App'x 234, 238 (4th Cir. 2014).   Plaintiff's reliance on additional facts, such as the 2014 election, or a new legal theory, does not create a basis to pursue a second suit to challenge the legality of the identical redistricting Plan.

Finally, the third element is also met because the parties in this case and in the earlier case are identical or in privity.   Indeed, plaintiff concedes in his Opposition that the parties are the same.   ECF 35-1 at 2 ("[T]he only similarity is the identity of the parties (that I am the Plaintiff and the Defendant is the State of Maryland).").

Accordingly, all three elements required for the application of res judicata are satisfied here.  It follows that plaintiff's Amended Complaint (ECF 31) must be dismissed.[6]

### IV.    Conclusion

For the foregoing reasons, the Motion to Dismiss (ECF 32) shall be granted.  An Order follows.


Date: September 7, 2016                              _____/s/_____
                                                     Ellen Lipton Hollander, for the
                                                     Three Judge Court

---

[6] In view of our disposition, we need not consider defendants' alternative grounds for dismissal.